[Crim. No. 24491. July 21, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY VALENTINE, Defendant and Appellant.

**COUNSEL**

Mark D. Greenberg, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye, Eugene W. Kaster, Ronald E. Niven, Ronald S. Smetana and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GRODIN, J.**—Proposition 8, adopted by the voters in 1982, added article I, section 28 to the California Constitution. In *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], we construed language in the first sentence of subdivision (f) of section 28 (hereafter section 28(f)) which declares that "[a]ny prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment . . . in any criminal pro-

ceeding." In *People* v. *Fritz* (1985) 40 Cal.3d 227 [219 Cal.Rptr. 460, 707 P.2d 833], we considered, in one context, that portion of the first sentence of section 28(f) which provides that such prior felony convictions shall be used "without limitation for purposes of . . . enhancement of sentence" in a subsequent criminal case.

■ We granted hearing in this case to confront the *second* sentence of section 28(f): "When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court." Defendant and the People agree that this language is directed at *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826]. *Hall* held that when a prior conviction is pertinent only to ex-felon status as an element of a currently charged offense, the jury may not learn either the fact or the nature of the prior conviction if defendant offers to stipulate he is an ex-felon.

We conclude that section 28(f) eliminates the per se rule of *Hall*. Under the new constitutional provision, the jury must be advised that defendant is an ex-felon where that is an element of a current charge. The People concede, on the other hand, and we agree, that where defendant will stipulate to ex-felon status, evidence of the *nature* of his prior convictions still may and should be withheld from the jury, since such evidence is irrelevant to the ex-felon issue.

■ Here, despite defendant's offer to concede his prior convictions, the trial court ruled incorrectly that section 28(f) required full disclosure of their nature in open court. The jury therefore learned that defendant, charged with robbery and possession of a concealable firearm by an ex-felon, had suffered convictions two years earlier for robbery and assault with a deadly weapon. The error was prejudicial, and the prejudice was not dispelled when the same priors were also used to impeach defendant's trial testimony. We must therefore reverse his current convictions.

### FACTS

Defendant was tried for offenses arising from the 1983 armed robbery of a Vallejo gasoline station. Counts I and II of the information charged him with the robberies of Michelle and Stephanie Mooney. (Pen. Code, § 211.)[1] Count III charged possession of a concealable firearm by an ex-felon (§ 12021) in that defendant had previously been convicted of robbery. The information further alleged that he had personally used a firearm in the current robberies (§ 12022.5) and, for purposes of sentence enhancement,

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

that he had previously been convicted of a serious felony, robbery (§ 667, subd. (a)).

On August 14, 1983, about 10 p.m., assistant manager Michelle Mooney and her sister Stephanie were closing the Mobil station at 500 Tennessee Avenue in Vallejo. Stephanie had turned off the outside lights and was locking the pumps when a Black man wearing a nylon stocking over his face approached and stuck an automatic pistol in her back. He ordered her into the station office, where Michelle was doing bookwork. As Stephanie and the gunman entered, he demanded cash. He also ordered that the lights inside the office be turned off, but Michelle protested she did not know how.

The three walked to the cash register; the man did so in a crouching manner, keeping below the level of the counter. At his direction, the women emptied the contents of the register, $431.55, into a paper bag. The robber demanded that some Kool cigarettes also be thrown into the bag, and this was done. The robber then took the bag and left on foot.

Michelle called the police. When they arrived, Stephanie described the robber as wearing a hairnet, not a nylon; she noted that he had frizzy hair, a goatee, and bushy eyebrows, and was wearing blue jeans and bright white tennis shoes. Michelle mentioned the goatee and a beanie cap, but did not refer to the robber's hair as frizzy; she noted simply that it was short, greasy, and black.

On August 16, two days after the robbery, the two women were separately shown a photo lineup; neither could make an identification, but Michelle picked Victor Cook as resembling the robber. On August 17, both women picked Lenus Guthrie and defendant from a new group of photos.

On August 18, a man Michelle thought was the robber came into the station to buy snacks. The police were summoned, and they detained defendant three blocks from the station. Transported to the scene, Stephanie and Michelle identified defendant as their assailant.

Both sisters also positively identified defendant at trial. Michelle testified that the bright lights in the station's office gave her a good view of the robber's face, which was not substantially obscured by the stocking. She described the robber as a dark-complexioned Black male, about five feet five inches tall, with either curly or frizzy hair, heavy eyebrows, and a goatee. He had worn a blue nylon sweat jacket.

Michelle also stated that the robber had walked with a distinctive wobble or limp. The police report contained no such information, and Michelle

acknowledged she might not have remembered the limp until the week before trial. However, Detective McGraw, who conducted the photo lineups, testified he placed defendant's picture in the August 17 group because defendant was similar in height to the described robber, and McGraw had been told defendant walked with a limp.

Officer Kincaid, who arrested defendant on the 18th, first stated that defendant's physical appearance on that date "could not have been more similar" to the description in the police report of August 14, including the goatee. However, he later acknowledged that defendant's hair was not frizzy on the 18th, as Michelle had stated, but in braids. Michelle said defendant's appearance on August 14 and 18 was identical, including his limp. Stephanie was unable to identify tennis shoes taken from defendant on the 18th as those the robber had worn on the 14th.

Questioned after his arrest, defendant first said he was with friends at the time of the robbery, but declined to say where or with whom. He then stated he was at the house of his brother, Tony James, but could not remember the address. Later, defendant declared that he, his stepbrother Joe Senago, and James had been in City Park, which is near the Mobil station.

Defendant called three witnesses who testified in substance that defendant was at Marguerite Robinson's house from 9 p.m. on the 14th to 3 a.m. on the 15th and discussed a car he intended to buy. All the defense witnesses stated that defendant's hair was in braids and that he was wearing black pants (called "Black Bens" by some witnesses). Two agreed that he was also wearing a dark leather jacket. The witnesses suggested that defendant smoked only Camel cigarettes and was smoking Camels that evening. Robinson noted that defendant did walk with a limp.

In his own behalf, defendant testified as follows: He was at Marguerite Robinson's, where Tony James was also living, from 9 p.m. to 3 a.m. on the night of August 14-15. He was wearing black pants, a black jacket, and his brother's old white tennis shoes; he never wore blue jeans. He walked with a limp after a hip replacement, and he was unable to crouch down. His hair was in braids on the 14th. He did go to the Mobil station on the 18th because a woman from whom he intended to purchase a car lived in the vicinity; he was waiting for her to return home and needed to buy cigarettes. He smoked only Camels, but had smoked Kools in past years. He was evasive when first questioned by the police because he was worried that Tony James was in trouble. He did not know James' address at the time.

Marvin Madsen testified in rebuttal for the prosecution. He stated that he was a canteen officer at the Solano County jail and that his records indicated defendant had purchased Kool cigarettes while in custody in August 1983.

## DISCUSSION

At the outset of trial, the prosecutor moved to amend the information to include count III, possession of a concealable firearm by an ex-felon (§ 12021, *supra*). Despite defense counsel's objection that the jury might thus hear evidence of defendant's prior convictions, the court granted the motion.

Counsel then stated that defendant "would stipulate to the prior conviction[s] and request that the Court order that either the Court could generally explain to the jury what the charges are, or in some way sanitize this so that the jury is not informed that [defendant] had a prior conviction." The court denied the request, citing section 28(f)'s requirement of "[proof] in open court." Count III, which specified the prior as robbery, was read to the jury. An abstract of judgment was subsequently introduced in evidence, showing that defendant had suffered convictions in a 1981 trial for robbery and assault with a deadly weapon. The jury was subsequently instructed that it could consider the priors only for purposes of the ex-felon element of count III and for impeachment (see discussion, *post*).

In *People* v. *Hall, supra,* 28 Cal.3d 143, this court held that if a prior conviction is relevant only to establish the ex-felon status necessary for violation of section 12021 (felony possession of concealable firearm) and if defendant will stipulate to its existence, the jury may not learn either the nature or the fact of the prior. The court first reasoned that the Evidence Code permits only relevant evidence; since any prior felony satisfies section 12021, the nature of the prior is irrelevant. (P. 153.)

Moreover, said *Hall,* even though the fact of a prior conviction is an "element" of section 12021, it is not "relevant" for purposes of affirmative proof if not genuinely disputed, as where the defendant will stipulate. In usual cases a jury will be told that defendant has stipulated to a specified element of a charge, but the *Hall* majority deemed that practice unduly prejudicial where the jury would thereby learn that defendant had committed unnamed prior offenses. Hence, *Hall* ruled, the jurors could be told only that defendant had stipulated to an unspecified element of the felony concealable-firearm charge. They could not learn that the missing element involved a prior conviction unless the omission would prejudice some other aspect of the People's case. (Pp. 153-155, and fn. 7.)

It seems obvious that the second sentence of section 28(f) was aimed squarely at *Hall.* The People propose that section 28(f) was intended to return the law to its pre-*Hall* state. Prior to *Hall,* they suggest, the courts had already limited the prosecution's latitude to introduce "stipulated"

priors in a section 12021 case. For example, only one such prior could be disclosed to the jury, since only one was necessary to establish defendant's ex-felon status. (*People* v. *Morrison* (1977) 67 Cal.App.3d 425, 428 [136 Cal.Rptr. 650]; see also *People* v. *Zimmerman* (1980) 102 Cal.App.3d 647, 657 [161 Cal.Rptr. 669, 14 A.L.R.4th 214]; cf. *People* v. *Duran* (1983) 140 Cal.App.3d 485, 499 [189 Cal.Rptr. 595].) At least one Court of Appeal had found an abuse of discretion under Evidence Code section 352 when, after defendant's offer to stipulate to the ex-felon element of a section 12021 charge, the trial court denied his motion to withhold the nature of the prior felony from the jury. (*People* v. *Piper* (1980) 103 Cal.App.3d 102, 110 [162 Cal.Rptr. 833].)

The People suggest that Proposition 8 was not intended to upset this line of precedent. ■■■ They argue that section 28(f) abrogates *Hall*'s rule denying the jury all knowledge that defendant is an ex-felon. They concede, however, that if defendant will stipulate to this status, the *nature* of any prior convictions should still be withheld.

We agree. The plain language of section 28(f) states only that "prior conviction[s which are] element[s]" of a current charge must be "proven . . . in open court." As *Hall* noted, in a section 12021 case, *any* prior felony, regardless of its nature, satisfies the ex-felon element of the offense. In such a case, only the fact, not the nature, of any prior "conviction" is an "element" of the current charge. Proposition 8's drafters were well aware of *Hall*'s two-step "nature and fact" analysis and must also be presumed aware of the pre-*Hall* authority the People acknowledge. The drafters could easily have chosen language which would make clear that both the fact and nature of priors relevant to an ex-felon status offense must be proved "in open court."[2]

In any event, we assume the drafter and voters intended an enactment that is constitutional. To the extent section 28(f) required proof "in open court" of the nature of prior convictions solely to establish the ex-felon element of a current charge, the section would encounter problems of federal due process. Such information has no "tendency in reason" (Evid. Code, § 210) to prove anything the prosecution must show to establish a violation of section 12021. Hence it might well violate the fair-trial requirement "that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence." (*Bruton* v. *United States* (1968) 391 U.S. 123, 131,

---

[2]We recognize that the first sentence of section 28(f), which uses the word "conviction" in the impeachment and enhancement contexts, refers to the nature as well as the fact of prior felonies. In those contexts, of course, the details of the priors are highly relevant. No rational construction of section 28(f) would simply assume that "conviction" means exactly the same thing in these two very different situations.

fn. 6 [20 L.Ed.2d 476, 482, 88 S.Ct. 1620], quoted in *Castro, supra,* 38 Cal.3d at pp. 313-314.)

Defendant urges, however, that even the fact of prior convictions must still be kept from the jury, despite section 28(f), if the accused stipulates to his status as an ex-felon. But the contention ignores the words of section 28(f), which state expressly that a prior felony conviction "*shall* be proven . . . in open court" (italics added) when it is an element of a current charge. Indeed, defendant's interpretation simply repeals the second sentence of section 28(f).

Nonetheless, and even though defendant concedes that section 28(f) was a response to *Hall,* he suggests that the new provision had no substantive effect on that decision. His reasoning is not persuasive. Defendant first notes that several provisions of Proposition 8 are "cosmetic," since they simply restated existing law (e.g., repeal of laws governing mentally disordered sex offenders, abolition of diminished capacity defense). He urges a similar effect for section 28(f). But in the examples defendant cites, the "restatement" effect of the Proposition 8 language is apparent from its terms. Defendant fails to show how section 28(f)'s language, which seems directly contrary to "existing law" (i.e., *Hall*), has merely "restated" it.

Defendant argues that Proposition 8 retains all pre-existing rules of relevance. (Art. I, § 28, subd. (d); see Evid. Code, § 351; *People v. Perkins* (1984) 159 Cal.App.3d 646, 650 [205 Cal.Rptr. 625].) Hence, he posits, it does not overturn *Hall*'s holding that stipulated ex-felon status, since not genuinely disputed, is "irrelevant" for the jury trying a section 12021 charge. Defendant's reasoning is flawed. *Hall* itself acknowledged that where ex-felon status is an element of the offense, defendant's offer to stipulate makes it "irrelevant" only in the sense that the prosecution cannot then adduce other proof on that issue. *Hall*'s rule that the jury cannot even hear the nature of the stipulation was based not on relevance, but on undue prejudice. (28 Cal.3d at pp. 152-155.) Section 28(f)'s provision for proof of ex-felon status "in open court" seems a direct repudiation of this last premise of *Hall.*

Defendant suggests that even after Proposition 8, a trial court would abuse its discretion under Evidence Code section 352 if it refused to withhold the fact of stipulated ex-felon status from the jury in a section 12021 case. *Hall,* he urges, established that disclosure of this fact to the jury is more prejudicial than probative as a matter of law.

A majority did conclude in *Castro, supra,* that subdivision (d) of article I, section 28 (section 28(d)) applies Evidence Code section 352 to section

28(f). Thus, even though the first sentence of section 28(f) states that priors shall be used "without limitation" for impeachment, the trial court in a post-Proposition 8 case retains discretion to exclude priors when their impeachment value is outweighed by their prejudicial effect. (38 Cal.3d at pp. 307-313.)

The *Castro* majority conceded, however, that the first sentence of section 28(f) was intended to overrule certain decisions of this court subsequent to *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. Those decisions had largely *foreclosed* trial court discretion by establishing rigid rules for exclusion of priors offered for impeachment. (*Castro, supra,* 38 Cal.3d at pp. 307-309.) An analogous intent appears in the second sentence of section 28(f). By providing that ex-felon status "shall be proven . . . in open court" where it is an "element" of a current charge, the sentence overrules *Hall's* holding that such a procedure is unduly prejudicial as a matter of law.

Even if a trial court theoretically retains some discretion with respect to the "open court" provision, it is difficult to see how that discretion would apply in practice. In the impeachment context, probative value is weighed against prejudicial effect principally by assessing the *nature* of the prior and whether it is recent or remote—all facts the jury will learn if such a prior is admitted. Here, by contrast, in every case where the defendant stipulates to ex-felon status, the jury will learn only that fact, never the nature of the prior convictions or when they occurred. There seems little basis for a decision that disclosure of this limited fact is more or less "probative" or "prejudicial" in individual cases. It is equally probative in all, insofar as it is the minimum necessary to establish an element of the section 12021 charge. ■ ■ ■ ■ And it is equally prejudicial in all, since it discloses ex-felon status without further elaboration.[3]

---

[3]Defendant suggests a number of other ways in which the inherent prejudice of disclosing ex-felon status to a jury could be minimized. He argues that section 28(f) should be interpreted to require bifurcated trials, with proof of ex-felon status made only to the judge, who would be the "trier of fact" for this limited purpose. Alternatively, he proposes that the jury may learn of defendant's ex-felon status, but only after it has returned a finding that he possessed a concealable firearm.

We do not believe that either procedure is necessary. Both would retain *Hall's* requirement that the jurors be kept ignorant of defendant's prior record when they decide the possession issue, even though his ex-felon status is an element of the underlying charge. *Hall* had reached that result despite vigorous arguments by the People that jurors might resist a firearm-possession finding which they knew would lead to a felony conviction unless they also understood why possession of the gun was being treated as a felony. (28 Cal.3d at pp. 154-155; see also *Piper, supra,* 103 Cal.App.3d at p. 109.) It seems reasonable to assume that section 28(f)'s drafters were responding to such concerns when they provided for mandatory disclosure of ex-felon status "to the trier of fact in open court."

Nor is bifurcation mandatory under *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644

Defendant acknowledges that his proposed construction of section 28(f) is not required by *federal constitutional* limitations on evidence which is utterly irrelevant or unduly prejudicial. The concession is a prudent one. Where ex-felon status is an element of an offense, it is hardly irrelevant in a fundamental constitutional sense. And the United States Supreme Court has acknowledged that states may have "one-step" recidivist statutes which require proof to the guilt jury of priors bearing on punishment. Where proper limiting instructions are given, such schemes do not offend federal due process. (*Spencer* v. *Texas* (1967) 385 U.S. 554, 559-569 [17 L.Ed.2d 606, 611-617, 87 S.Ct. 648]; but see *Bracamonte, supra.*) ■ A fortiori, states may make ex-felon status an element of an offense, and may allow proof of this element by "sanitized" stipulation with proper limiting instructions.[4]

Defendant suggests, however, that we must "harmonize" section 28(f) with preexisting principles of *state* due process. In his view, the rules cul-

[174 Cal.Rptr. 191]. *Bracamonte* declared a rule of procedure that when defendant disputes priors alleged for purposes of sentence enhancement, trial on the priors should be postponed until after conviction on the current charge. As *Bracamonte* noted, "[t]he issue of guilt 'and the proof of prior convictions [for enhancement of sentence] are clearly severable.' [Citation.] The latter is unrelated to the substantive issue of guilt and affects only the penalty imposed. [Citation.]" (P. 650.) Here, by contrast, ex-felon status is directly related to the substantive issue of guilt and is not "clearly severable."

Finally, defendant argues that the trial court should at least have granted his motion to sever the firearm-possession count from the robbery charge in order to prevent disclosure of defendant's criminal record from affecting the jury's deliberations on the latter crime. We need not resolve the contention, since we hold that disclosure of the *nature* of defendant's priors was reversible error as to all counts.

At oral argument, counsel for the People conceded his view that a blanket severance rule would have little practical impact on the prosecutorial function. Nonetheless, we decline to rule that such a procedure is mandatory in all cases. When the joinder statute (§ 954) would otherwise permit consolidation of charges, a trial court should, if requested, carefully exercise its discretion whether to try an ex-felon count separately "in the interests of justice." Insofar as the particular facts are known pretrial, the court must balance the legitimate benefits, judicial and prosecutorial, of a consolidated trial against the likelihood that disclosure of ex-felon status in a joint trial will affect the jury's verdict on charges to which that status is irrelevant. Of course, severance is not necessary if the priors on which the ex-felon count is based would be cross-admissible on the remaining charges. (See *Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 447-454 [204 Cal.Rptr. 700, 683 P.2d 699].)

[4]Federal decisions disagree whether a trial court may or should exercise its discretion under the *rules of evidence* to withhold the *nature* of a prior felony from the jury where ex-felon status is an element of the offense. (Compare, e.g., *United States* v. *Poore* (4th Cir. 1979) 594 F.2d 39, 41-43 [nature of prior should be withheld where unnecessary to establish element of charge or other portion of prosecution case]; *United States* v. *Spletzer* (5th Cir. 1976) 535 F.2d 950, 955-956 [same]; and *United States* v. *Kemper* (6th Cir. 1974) 503 F.2d 327, 329, cert. den., 419 U.S. 1124 [42 L.Ed.2d 824, 95 S.Ct. 810] [same]; with, e.g., *United States* v. *Williams* (3d Cir. 1979) 612 F.2d 735, 739-740, cert. den. (1980) 445 U.S. 934 [63 L.Ed.2d 770, 100 S.Ct. 1328] [defendant cannot "modify" statute by stipulating away prior as element]; and *United States* v. *Smith* (8th Cir. 1975) 520 F.2d 544, 548, cert. den. (1976) 429 U.S. 925 [50 L.Ed.2d 294, 97 S.Ct. 328] [same]; see also *United States* v. *O'Shea* (11th Cir. 1984) 724 F.2d 1514, 1516 [no per se rule].) No federal case has suggested, as did *Hall*, that even the *fact* of ex-felon status should be withheld where it is an element.

minating in *Hall* were founded on the due process clauses of the California Constitution (art. I, §§ 7, 15). Even if so, we face no complicated constructional problem. The people may adopt constitutional amendments which define the scope of existing state constitutional protections. The voters have decreed that henceforth the California Constitution not only permits, but requires, proof "in open court" of ex-felon status when that status is a substantive element of a current charge. This clear, recent, and specific command supersedes any previous inconsistent interpretations of our state charter's due process guarantees. (See *In re Lance W.* (1985) 37 Cal.3d 873, 887 [210 Cal.Rptr. 631, 694 P.2d 744].)[5]

We hold that the "proof in open court" provision of Proposition 8 overrules *Hall* to the extent *Hall* precludes disclosure of stipulated ex-felon status to a jury trying a charge, such as violation of section 12021, as to which such status is an element.[6] On the other hand, Proposition 8 does not require the nature of prior convictions to go to the jury in such a

---

[5]At oral argument, counsel for defendant suggested on two grounds that section 28(f) denies equal protection among persons prosecuted under section 12021. First, he noted, a violation of section 12021 is a "wobbler"—chargeable either as a felony or as a misdemeanor—and section 28(f) requires proof of a prior record "in open court" only when, as in defendant's case, the current offense is charged as a felony. Second, he observes, certain *nonfelony* priors can trigger a section 12021 violation, but section 28(f) requires proof of a prior record "in open court" only if, as in defendant's case, it includes felonies. His challenges are unpersuasive. There is a rational basis for section 28(f)'s application only to a current *felony* charge. Focusing on *Hall,* and thus on section 12021, Proposition 8's drafters could well have concluded that jurors would resist treatment of pistol possession *as a felony* unless they understood that the reason for such treatment was defendant's prior criminal record. (See fn. 3, *ante.*) It looks as though section 28(f)'s limitation to *felony priors* stems from chronological happenstance. Nonfelony priors were added to section 12021 in April 1982 (see Stats. 1982, ch. 136, § 6, p. 445), after Proposition 8 had already been circulated for signatures. Any resulting discrimination between felony and nonfelony priors appears entirely inadvertent. We need not decide whether, under these circumstances, section 28(f) should be construed to include nonfelony priors.

[6]Proposition 8 requires proof of a prior felony conviction "in open court" when it is an "element" of a current felony charge. Earlier California decisions had recognized a distinction between priors which are "elements" of a current charge, on the one hand, and priors alleged to enhance punishment for a current offense, on the other. These cases had held that, in the latter situation but not the former, an accused could stipulate outside the jury's presence to the alleged priors. (See, e.g., *People* v. *Davenport* (1962) 210 Cal.App.2d 335, 340-341 [26 Cal.Rptr. 753].) In particular, section 666, which allows felony punishment for a petty theft committed by a person who has certain theft-related priors, had been placed in the "enhancement" category. (*People* v. *Gallinger* (1963) 212 Cal.App.2d 851, 855, 857 [28 Cal.Rptr. 472].) But the *Hall* majority said section 666 is "logically indistinguishable" from an "elements" statute in this respect, and the rule allowing stipulation outside the jury's presence should apply in both instances. (28 Cal.3d at pp. 155-156; see also *People* v. *Sherren* (1979) 89 Cal.App.3d 752, 756-757 [152 Cal.Rptr. 828].) Here we do not confront the effect of Proposition 8 on cases tried under section 666. (Compare, e.g., *People* v. *Ancira* (1985) 164 Cal.App.3d 378, 381 [210 Cal.Rptr. 527], with *People* v. *Callegri* (1984) 154 Cal.App.3d 856, 866-867 [202 Cal.Rptr. 109].)

case, since that information is utterly irrelevant to the charge. Disclosure of the nature of the priors remains error in post-Proposition 8 trials.[7]

 Here, the trial court ruled that the jury must hear the nature of defendant's prior convictions for purposes of the section 12021 charge against him, based on a mistaken interpretation of section 28(f). Nor was the error harmless.[8] The prosecution presented strong, but not overwhelming, eyewitness identification. There were significant discrepancies between the descriptions initially given of the robber by the victims and defendant's appearance when arrested, and at the time of the robbery according to friends. Defendant asserted a substantial alibi defense. The prior convictions

---

[7]Of course, where the fact of a prior conviction is admitted solely to establish ex-felon status as an element of violation of section 12021, the trial court, at defendant's request, should give an instruction limiting the jury's consideration of the prior to that single purpose. The instruction should make clear that the nature of the prior conviction is irrelevant in this context, and that the jury should not speculate on the nature of the prior.

[8]The People argue that defendant waived his right to argue for a "sanitized" disclosure to the jury because the import of his motion *in limine* was to withhold the *fact* of ex-felon status. But we read counsel's request that the court "generally explain to the jury what the charges are, or in some way sanitize this," as broad enough to cover the alternative of "sanitization."

We also recognize that before adoption of Proposition 8, this court determined, in the context of priors offered for impeachment, that the prejudicial effect of disclosing a prior was not dispelled by "sanitizing" it—that is, by revealing the fact but not the full nature of the prior. (*People* v. *Rollo* (1977) 20 Cal.3d 109, 115-120 [141 Cal.Rptr. 177, 569 P.2d 771]; see also *People* v. *Barrick* (1982) 33 Cal.3d 115, 126-128 [187 Cal.Rptr. 716, 654 P.2d 1243].) *Hall* cited *Rollo* as support for the conclusion that both the fact and nature of the prior on which a section 12021 charge is based must be kept from the jury. (28 Cal.3d at p. 156.) Nonetheless, we conclude that new section 28(f) validly permits the jury to hear the fact, but not the nature, of the prior felony on which a charge of possession of a concealable weapon by an ex-felon is based. Section 28(f) was obviously intended to undercut *Hall*. Moreover, *Rollo*'s argument is not as compelling in the context of ex-felon offenses as in the context of impeachment. As *Rollo* explained, it is the nature of the felony which is probative as to credibility; allowing all felonies for impeachment, so long as they are "sanitized," would prevent the jury from assessing the relevance of a particular prior offense and would encourage adverse inferences on credibility from felonies which have no value for that purpose. (20 Cal.3d at pp. 118-119.) In addition, "[b]ecause a conviction thus 'expurgated' is of so little assistance in determining credibility, [some] jurors may give up the effort and simply draw the improper inference that the conviction 'at least' shows the defendant has a criminal disposition." Or, under the circumstances, they "may well speculate that the conviction was for an offense especially damaging to the defendant's credibility. . . . Why else, they might wonder, were they told of its occurrence?" (*Id.*, at p. 119.) In an ex-felon weapons charge, by contrast, it is the fact of the prior which is probative. When the fact of a prior is admitted solely to prove ex-felon status, the jury can be told in clear terms that this is its only purpose and that neither the fact nor the nature of the prior has any other bearing on defendant's credibility (if relevant) or guilt on any charge. Such an instruction should diminish the jury's inclination to speculate on the nature of the prior to defendant's prejudice. In our view, section 28(f) expresses the electorate's judgment that any remaining inevitable prejudice from disclosure of the fact of the prior is outweighed by the propriety of disclosing an element of the current offense to the trier of fact. Finally, we note that here, unlike in *Rollo* and *Barrick, defendant* is urging that a "sanitized" disclosure is preferable to revelation of the nature of the prior.

were for a recent robbery and deadly weapon assault. The universal agreement as to defendant's distinctive limp weighs in the prosecution's favor. Yet there is a substantial likelihood that disclosure of the nature of the prior convictions affected the jury's verdict.

The People argue, however, that any prejudicial effect of the error was dispelled when defendant elected to testify and was impeached, without objection, by full disclosure of the same prior offenses. On this record, we cannot agree.

If the trial court had ruled correctly on defendant's motion to admit only his "sanitized" stipulation to ex-felon status, defendant could have prevented disclosure of the nature of his prior offenses by declining to testify. Once the trial court rejected that motion, however, it was clear that the nature of the priors would be revealed whether he testified or not, and he had nothing to lose by taking the stand.

His testimony, on the other hand, was hardly crucial to his defense; for the most part, it simply corroborated his three alibi witnesses and explained his evasive statements, none of which was directly inculpatory, to the police. Thus, it may well be that, but for the erroneous ruling, defendant would not have elected to testify and would not have exposed himself to impeachment with his priors.

Under these circumstances, we cannot speculate that the jury would have heard the prejudicial evidence had the trial court not misapplied section 28(f). It therefore appears "reasonably probable," in appellate parlance, that a verdict more favorable to defendant would have been returned had the error not occurred. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Hence, defendant is entitled to a new trial on all counts.[9] Our analysis makes it unnecessary to reach defendant's other contentions.

The judgment is reversed.

---

[9]The People urge that defendant "waived" the question whether the priors were properly admitted *for impeachment* (see *Castro, supra*), since he neither objected to their use for that purpose nor requested that the jury be instructed not to consider them in that context. Hence, the People reason, we must deem them properly admitted for impeachment, thus dispelling the prejudice from their introduction to prove ex-felon status. But defendant was not obliged to raise the *impeachment* issue in order to preserve his argument that he suffered prejudice from the court's erroneous ruling on the *ex-felon* issue. Defendant's worry is not simply that the priors undermined his credibility. Rather, he claims the jury may have used the nature of his past record for the substantive purpose of inferring his current guilt. That concern is not foreclosed by defendant's failure to request a "no-impeachment" instruction which does not even address it.

Bird, C. J., Mosk, J., Broussard, J., Reynoso, J., Lucas, J., and Figone (Richard), J.,* concurred.

Respondent's petition for a rehearing was denied August 20, 1986.

---

*Judge, San Francisco City and County Superior Court, assigned by the Chairperson of the Judicial Council.