Filed 7/29/13  P. v. Williams CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C069782 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 10F00520, 10F04888) |
| v. | |
| ORLANDO JOSE WILLIAMS, JR., | |
| Defendant and Appellant. | |

A jury found defendant guilty of possession of heroin and ecstasy (MDMA) in prison (Pen. Code, § 4573.6).  In a bifurcated proceeding, the trial court found true defendant's prior strike conviction for robbery.  (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)  The trial court sentenced defendant to six years in prison, the midterm of three years doubled.  Pursuant to Penal Code section 1170.1, subdivision (c), it also resentenced defendant on a prior conviction for the same offense to a consecutive term of two years (one-third the midterm doubled).

On appeal, defendant contends the trial court erred when it admitted evidence of his prior conviction for possessing heroin in prison, because he offered to stipulate that he knew what heroin was, thus establishing the knowledge element of the crime.  Although we agree that

1

admission of the prior conviction was error, we find the error harmless.  Accordingly, we shall affirm.

**FACTS**

*Current Offense*

Defendant was an inmate at Folsom State Prison following his conviction for robbery. He and his cellmate were housed on the fifth floor.  About 4:00 a.m. on May 26, 2010, three members of the prison's Investigative Services Unit--Snyder, Carrillo, and Guzman--contacted defendant to conduct a search of his cell.  They ordered both inmates out of the cell and handcuffed them.  They then conducted a patdown search over the inmates' clothing and found no contraband.

Guzman and Carrillo escorted the two inmates to the first tier to conduct an unclothed search.  Guzman searched defendant's cellmate and could not see Carrillo or defendant during this search.  Carrillo searched defendant.  Carrillo removed defendant's handcuffs and ordered him to put his hands on his head and face Carrillo.  Carrillo then directed defendant to hand him one piece of clothing at a time.  Defendant was compliant and calm during the search; he made no furtive movements.

After defendant removed his last piece of clothing, Carrillo asked him to open his mouth. Defendant then turned and ran down the tier toward the shower area.  Carrillo and Snyder chased after him.  Just before defendant reached the shower area, Carrillo saw him throw something underhand.  The item landed on the slanted roof over the laundry and fell into the shower area. Defendant continued to run until he reached a fence, where Snyder ordered him down and defendant complied.  Snyder handcuffed him and escorted him to the rotunda.  There, Snyder put defendant in a holding cell.

While Guzman was searching defendant's cellmate, he heard the slapping noise of defendant's bare feet on concrete.  He followed the sound and saw the very end of defendant's run.  Carrillo said defendant threw something, so Guzman and Carrillo went to the shower.

2

Carrillo unlocked the door and saw a plastic bag containing five black bindles and bluish-green latex. He felt pills inside the latex. Carrillo put the item down and photographed it where he found it. Then he secured it in his jumpsuit.

Carrillo recovered 2.7 grams of heroin and 22 tablets of MDMA. Both were usable amounts. Officers searched defendant's cell and found a cell phone and a charger between two mattresses on defendant's bunk.

Defendant testified and claimed he ran when asked to open his mouth to create a diversion because he thought his cellmate still had the cell phone. Possession of a cell phone in prison is a disciplinary violation. Defendant denied he threw anything or that he possessed heroin or MDMA on this date. He knew what heroin and MDMA were and that both are controlled substances.

*Prior Offense*

On December 4, 2009, defendant was found in possession of two bindles of heroin while in prison. On June 8, 2010, he was convicted on his plea of a violation of Penal Code section 4573.6.

## DISCUSSION

Defendant contends the trial court's admission of his prior conviction for possession of heroin in prison was error. He argues the evidence had scant probative value on the issue of knowledge because he offered to stipulate to his knowledge of heroin. He contends the evidence was unduly prejudicial and this was a close case, as shown by the length of jury deliberation and the jury's request for a readback of Carrillo's testimony and defendant's testimony about the whereabouts of the cell phone.

I

*Background to the Prior's Admission*

Prior to trial, the People moved to admit evidence of defendant's 2010 conviction for possession of drugs in prison. The People proposed to prove this conviction with a certified court record. They argued the prior offense was admissible under Evidence Code section 1101,

subdivision (b) (section 1101(b)) to prove knowledge of the nature of the heroin as a controlled substance.

Defendant moved to exclude the prior as unduly prejudicial. Defendant objected that knowledge was not in dispute, arguing, "Well, let's be serious about things here. One, those kinds of things are not in dispute. I mean, seriously if somebody has heroin in prison, they know what it is." He asserted that admitting a conviction for the same crime "is probably the most prejudicial fact that you could put into any proceeding." Defendant argued the real issue was possession.

The trial court recited the law from *People v. Perez* (1974) 42 Cal.App.3d 760 (*Perez*) as follows: "If defendant admitted the narcotic nature of the substance, the court cannot admit the prior conviction. Generally, however, the prior conviction is admissible under section 1101(b) unless it is overly prejudicial. The safeguard is the limiting instruction."

Defendant argued the limiting instruction was not effective and that he was willing to stipulate that "he knows heroin when he sees it and understands it's a narcotic." The trial court responded the "bigger question" was whether defendant knew what was in the package and defendant was unlikely to admit that, instead he would claim it was not his. Defendant agreed that was his defense.

The trial court asked how defendant would "get past" section 1101(b). Defendant responded, "It's called section 352 of the Evidence Code." The court stated that all relevant evidence is prejudicial, but here evidence of defendant's prior was not unduly prejudicial. "I don't see how the People are denied under section 1101(b) the right to present evidence that he had heroin and was convicted of it a month or two before for that limited purpose that he knew what heroin was, he had it in his pocket before, he had it in his mouth this time and threw it out

4

as he was running."[1]  The court ruled the evidence was admissible under section 1101(b) for the limited purpose of showing "the plan or motive or intent."

Defendant's prior conviction was read to the jury as an "undisputed fact."  The trial court then instructed the jury:  "This is brought to your attention for the sole purpose of establishing the degree of knowledge that the defendant may have about what heroin is.  It is not brought for any other purpose."  Later, the jury was instructed:  "If you decide that the defendant committed the uncharged offense, you may but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant knew that heroin and MDMA are controlled substances when he allegedly acted in this case.  [¶]  Do not consider this evidence for any other purpose except for the limited purpose of knowledge that heroin and MDMA are controlled substances.  Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime."  The court further instructed the jury that evidence of the uncharged offense was insufficient alone to prove guilt.

II

*The Law*

"The essential elements of unlawful possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character.'" (*People v. Martin* (2001) 25 Cal.4th 1180, 1184.)  Defendant's not guilty plea puts in issue all the elements of the offense.  (*People v. Steele* (2002) 27 Cal.4th 1230, 1243.)  Therefore, the People had to prove defendant knew of the narcotic character of the substance found in the shower.

"Evidence Code section 1101, subdivision (a), generally prohibits the admission of evidence of a person's character or a trait of his or her character when offered to prove his or her conduct on a specified occasion." (*People v. Avila* (2006) 38 Cal.4th 491, 586.)  Section

---

[1]  As we discuss briefly *post*, this analysis incorrectly suggests that defendant's prior may be considered as propensity evidence.

5

1101(b), however, permits admission of defendant's past criminal acts when relevant to prove a material fact at issue, such as identity, motive, or knowledge. (*People v. Roldan* (2005) 35 Cal.4th 646, 705, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, and fn. 22.) "In prosecutions for drug offenses, evidence of prior drug use and prior drug convictions is generally admissible under Evidence Code section 1101, subdivision (b), to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs. [Citation.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 607.)

In *Perez*, *supra*, 42 Cal.App.3d 760, the court set forth guidelines for the admission of prior narcotic activity to show defendant's knowledge of the narcotic nature of the substance in a drug case. The guidelines were: "(1) The prosecution must prove every element of its case including the defendant's knowledge of the narcotic character of the substance involved. [¶] (2) To prove this element, prior or subsequent narcotic activity on the part of the defendant is sometimes admissible. [¶] (3) The trial court has the discretion to allow the defendant to admit his knowledge of the narcotic nature of the object involved in the primary prosecution. [¶] (4) If the defendant stipulates to such knowledge, it is error to admit evidence of other narcotics activity. [¶] (5) There is no duty imposed on the trial court to *sua sponte* elicit a stipulation from the defendant as to his knowledge of the narcotic character of the substance involved. [¶] (6) It is not necessary for the defendant to raise this issue before the People can present such evidence. [¶] (7) However, before admitting any such evidence, the court must determine that the probative value of that evidence outweighs its inherent prejudicial effect and find that the evidence is not merely cumulative with respect to other evidence which the People have used to prove the same issue. . . ." (*Perez, supra,* at p. 766.)

In *People v. Washington* (1979) 95 Cal.App.3d 488 (*Washington*), the defendant was willing to stipulate he knew the narcotic nature of heroin, but not that he knew the specific contents of the balloon in the prosecution's case. The trial court found this stipulation insufficient and admitted Washington's prior conviction for possession of heroin. (*Washington,*

*supra,* 95 Cal.App.3d at p. 490.)  The appellate court held it was reversible error to admit evidence of defendant's prior conviction, concluding that *Perez* was incorrectly analyzed because the defendant need only stipulate to knowledge of the *type* of narcotic at issue, not the narcotic nature of the "*precise object or substance."*  (*Washington, supra,* at p. 492, original italics.)  The court found defendant had a *right* to stipulate.  (*Ibid*.)  While acknowledging that the People need not stipulate to an element of a crime if it would impair the effectiveness of their case, the court found no possible impairment of the legitimate effectiveness of the People's case, but only improper and unnecessary prejudice.  (*Ibid*.)

More recent cases have emphasized that the People are not required to stipulate to elements of a crime, to prevent admission of certain evidence, if stipulating would weaken the force of the case.  (See, e.g., *People v. Scheid* (1997) 16 Cal.4th 1, 17; *People v. Edelbacher* (1989) 47 Cal.3d 983, 1007.)  "There is a strong policy against depriving the People's case of its persuasiveness and strength by forcing the prosecutor to accept stipulations that soften the impact of the evidence in its entirety.  [Citations.]  Thus, prosecutors are not required to stipulate to the existence of any elements of the crime they are trying to prove where the stipulation will impair the effectiveness of their case and foreclose their options to obtain convictions under differing theories.  [Citation.]"  (*People v. Cajina* (2005) 127 Cal.App.4th 929, 933.)

The United States Supreme Court has recognized the importance of permitting prosecutors to present their full case, citing the rule that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."  (*Old Chief v. United States* (1997) 519 U.S. 172, 186-187 [136 L.Ed.2d 574] (*Old Chief*).)  "In sum, the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense.  A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it.  People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than

7

they have heard.  A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best." (*Old Chief, supra,* 519 U.S. at pp. 189-190.)

Even where a prosecutor is not required to accept a stipulation to prevent the admission of other crimes evidence, such evidence is still subject to weighing under Evidence Code section 352 (section 352) to determine if its probative value is substantially outweighed by the substantial danger of prejudice.  (*People v. Ewolt* (1994) 7 Cal.4th 380, 404 (*Ewolt*).)  "Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis. [Citations.]'  [Citations.]  'Since "substantial prejudicial effect [is] inherent in [such] evidence," uncharged offenses are admissible only if they have substantial probative value.'  [Citation.]" (*Ewolt, supra,* 7 Cal.4th at p. 404.)

III

*Analysis*

Defendant argues that the trial court erred in requiring that defendant stipulate to his knowledge of the drugs found in the shower in order to keep evidence of his prior offense from the jury.  He relies on *Washington*, which, as we have described *ante*, rejected that requirement and held instead that the "intended meaning" of *Perez* was that the defendant need only stipulate to "'his knowledge of the narcotic nature of the [*type* of] object involved'" in the case at hand. (*Washington, supra,* 95 Cal.App.3d at p. 492, original italics and bracket.)

A.      *Effect of Offer to Stipulate*

Defendant argues that admission of his prior drug offense was error under the reasoning of *Washington* because he offered to stipulate to knowledge.  However, as we have discussed *ante*, the persuasive effect of *Washington's* rule that the refusal to accept a defendant's stipulation to knowledge of the narcotic nature of a drug is *always* error has been eroded by subsequent cases emphasizing the prosecution's right to present its case in full without accepting defense offers to stipulate.

In light of this clear trend in the law (as well as the different rule set forth in *Perez* requiring a stipulation to the narcotic nature of the *precise substance at issue*), we decline to hold that the prior's admission, despite the offer to stipulate to general knowledge, was error per se, but instead advance to consideration of whether the trial court properly balanced the probative value of the evidence against its potential for undue prejudice pursuant to section 352.

### B. Section 352 Balancing

The only permissible probative value of the prior conviction in this case was to show defendant's knowledge of the narcotic nature of the heroin in his possession, should the jury find that he possessed it. Defendant had offered to stipulate to such knowledge. The probative value of admitting the prior conviction, which defendant had suffered very recently and under similar circumstances, in lieu of presenting the general stipulation to the jury, was slight. The potential for prejudice, however, was high.

In assessing the potential for prejudice, the trial court stated merely that "every piece of evidence that comes in against a defendant is prejudicial, that's why it's being offered." Along the same lines, it added, "It does create a prejudice, there is no question about it, but at the same time, all relevant evidence is going to create prejudice at one time or another. The question is whether it's undue, and in this case, I don't see how the People are denied under [section 1101(b)] the right to present the evidence that he had heroin and he was convicted of it a month or two before for that limited purpose that he knew what heroin was, he had it in his pocket before, he had it in his mouth this time, and he threw it out as he was running. I think it has to come in under 1101(b) . . . ."

This assessment of prejudice was inadequate. "'The "prejudice" referred to in [section 352] applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "'damaging.'" [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 320.) Here, the prejudice inherent in admitting defendant's recently-suffered prior conviction for possession of heroin in prison was the danger that the jury would apply it to the

9

facts of *this* case--where the charge was possession of heroin in prison--as propensity evidence; that is, as defendant had possessed heroin in prison very recently, he was likely to have possessed it in prison again, as alleged. The trial court failed to recognize and address this potential prejudice, arguably endorsing the use of the prior to prove propensity in its own description of the permissible use of the evidence; the prior's admission to assist the People in proving defendant's knowledge of the narcotic nature of heroin should *not* result in the jury's consideration of the prior as proof that defendant "had it in his pocket before, he had it in his mouth this time and threw it out as he was running," as suggested by the trial court.

C.    *Effect of Error*

Although the record indicates the trial court improperly conducted the balancing test under section 352, we find any error in admitting the evidence of defendant's prior conviction harmless.

While the evidence of defendant's prior conviction was "prejudicial" in that its potential for prejudice outweighed its probative value, we find it was not so "prejudicial" such that it affected the case as a whole. First, the trial court properly instructed the jury on the proper limited use of the evidence, that it could not be considered as propensity evidence, and that such evidence alone was insufficient to prove guilt. These instructions were correct and are not challenged on appeal. "We 'credit jurors with intelligence and common sense' [citation] and presume they generally understand and follow instructions [citation]." (*People v. McKinnon* (2011) 52 Cal.4th 610, 670.)

Further, the evidence against defendant was very strong. After undergoing a patdown search and a strip search, defendant ran when asked to open his mouth. Carrillo saw him throw something in the direction of the showers; the drugs were found there immediately. Although the case was a credibility contest between Carrillo and defendant, defendant's story was less than credible. He claimed he ran to create a diversion because he feared his cellmate possessed a prohibited cell phone. Since his cellmate was separately searched by Guzman, it is unclear how running from Carrillo and Snyder would aid his cellmate. Further, defendant testified that

10

possession of a cell phone was a disciplinary violation, as was failing to obey an order, such as running when ordered to open his mouth, while possession of drugs was a crime. Defendant asked the jury to believe not only that Carrillo lied--committed perjury--without apparent motive, but that his falsehood was followed by the fortuitous discovery of drugs, an extraordinary coincidence. The jury did not believe defendant's story.

Defendant contends the case was close because the jury requested readbacks of both Carrillo's testimony and his testimony about the whereabouts of the cell phone, and spent considerable time deliberating. We disagree that the jury's request for a readback of testimony, which lengthened the deliberations, necessarily indicates this case was close. Given the state of the evidence, it is more likely the careful deliberations show that the jury was conscientious and serious in approaching its task, giving defendant the full presumption of innocence. Had it improperly considered defendant's prior conviction as propensity evidence, it is likely its verdict would have come much sooner.

Having reviewed the entire record, we conclude it is not reasonably probable the result would have been different but for the trial court's evidentiary ruling in admitting the prior conviction. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

**DISPOSITION**

The judgment is affirmed.

          DUARTE          , J.

We concur:

      NICHOLSON      , Acting P. J.

       HULL        , J.